23, 1219 and 23, 1229. In re PB Life and Annuity Co., Ltd. Mr. Whitehill, whenever you're ready. Thank you, Your Honor. Good morning. May it please the Court, my name is Bill Whitehill and it's my honor and privilege to be here today on behalf of the Lindbergh and the Flowery defendants have ceded their argument to me as well. I want to start with what I think is the decisive point of this case and that is the zero-sum game point. And the nature of that is that it's undisputed that in UCO's complaint that they're seeking to recover on loans. Isn't there a threshold question about whether we can actually properly hear this at all? Well, that's the subject matter jurisdiction question and yes, there is a question on that. And this court has decided that on several occasions. The Joseph versus Solomon case in the MTB litigation. Well, Solomon, there was another jurisdictional hook. There was an immunity claim. And although the court's language says that they don't have to decide that issue of the removal claim, they went ahead and decided the subject matter jurisdiction. But we've never held that we're in orders non-final and doesn't meet the requirements of 1291 or some other aspect of bankruptcy court jurisdiction for appeal. We've never held that you can just go ahead and decide subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction in the district court is not appealable. Your Honor, if I might, this court in the MTB litigation case. I'm familiar with it. Well, this court said that. I don't read it that way. I think you're over reading it. That's loose, that may be loose language, but it doesn't stand for the principle that a court. There has to be some. Federal courts are courts of statutory courts. Unless there is a statutory hook, 1291 or 158 of the bankruptcy law, there's a certification process for non-final orders to come up through bankruptcy courts. But absent a final order or some rare exception, collateral order rule, which covers immunity cases other than that, we have never ruled. And Solomon doesn't stand for that. Solomon talks about the fact that they can consider it. But that meant people didn't argue subject matter jurisdiction below. And the court said, well, the fact that they didn't argue below doesn't preclude us from that. That's clear. But that's not a discussion of subject matter, appellate subject matter jurisdiction. Well, there's two forms of appellate subject matter jurisdiction. I'm quite aware of that. One is the statutory, is this within the appellate court's jurisdiction, that type of case. And then there's just basic subject matter jurisdiction. 1331, federal question, or 1332, diversity jurisdiction. One of those two has to be met. Are you telling me that a district court that decided that it had subject matter jurisdiction on denying a motion to dismiss, a preliminary motion to dismiss 12B1 motion, that that order is appealable? I'm telling you- It is not. From whence cometh the power of a court to decide an error of subject matter jurisdiction below when there's no appellate subject matter jurisdiction? As a matter of constitutional principle, this court, and every court, has a primary obligation to determine on its own, sui sponte, even if the parties don't raise it, the question of subject matter jurisdiction, 1331 or 1332. And that's exactly what this court said in the MTBE case. Well, I'm confused because don't we also have an obligation to respond and determine our subject matter jurisdiction, right? It feels like if we don't have subject matter jurisdiction in the first instance, then how do we get to the question of the district court's subject matter jurisdiction? This court, in the MTBE case, said, We conclude that review of this question is required, whether there is jurisdiction in the case as a whole, pursuant to independent obligation to satisfy ourselves of the jurisdiction of this court and the court below. Okay, so both courts have to have subject matter jurisdiction. What do you make of the United States Supreme Court in 1945? 1945, Caitlin v. United States. Denial of a motion to dismiss, even when the motion is based on jurisdictional grounds, is not immediately reviewable. Your Honor, the issue in Caitlin really was failure to state a claim. But I can do one better than Caitlin. I can go back to 1900 United States Supreme Court in the great southern fire company case, which is cited by this court in MTBE, 177 U.S. 449. And the United States Supreme Court said that there is this independent obligation requirement that a court always has to determine subject matter jurisdiction. Sure, that's no doubt. If the parties don't argue it, we're free to examine a case that's appropriately before us as to whether the lower court has subject matter jurisdiction. But when we don't have the right to review an order because Congress hasn't given it to us, then that issue doesn't come before us. Well, that happens in the remand cases, like SPV, OSIS, and... Can I try a little bit differently? The district court's judgment reversing the bankruptcy court's dismissal means that it will go back to the bankruptcy court where the case will proceed. Is that right? Well, that's what the order says. Right. So for our purposes, that means it's a non-final order. And so the problem here is that there's a final judgment rule. And so it has to, otherwise it's interlocutory and we can't appeal, unless you're saying that this falls within the reviewable collateral order. Well, Solomon, for example, was a question of remand, which is a question of federal subject matter jurisdiction. It was never raised below. It was not raised on appeal. This court took it up on its own in the first instance because... But Solomon was here appropriately. There was no question that Solomon fit within the categories of the appellate jurisdiction that we had. That's the point. Once it's here, then we can look at whether the lower court did or did not have subject matter jurisdiction, regardless of whether it's raised. But that doesn't get it here. A court always, always has the duty to determine whether subject matter jurisdiction existed. When I was an appellate judge in Texas, that was the first thing we did in every case, was look to see if subject matter jurisdiction existed. Two types of jurisdiction, appellate jurisdiction and subject matter jurisdiction. Because sometimes cases are moot. Sometimes they are not right. If we decide that we don't have appellate jurisdiction, do we dismiss the appeal? If you don't have appellate jurisdiction, then that would be the result. Okay. Fair enough. Yep. You've reserved a couple minutes for a vote. Mr. Cameron. Good morning, and may it please the court. Clinton Cameron on behalf of Apple Lee, Plaintiff Below, Universal Life Insurance Company. I think the colloquy that we just heard shows exactly why this court does not have jurisdiction over this appeal. Federal courts are creatures of power afforded to them by the United States Congress. In this case, that power presides in 28 U.S.C. Section 158 D.1. Can I ask you some questions? I think we've maybe covered that. Sure. I'm really puzzled just by the posture of this case. Why aren't the joint provisional liquidators bringing these claims? And why are you, a creditor, bringing claims against third parties for transfers from essentially the bankrupt estate to those third parties? Sure. So this case arises in the context of a Chapter 15 proceeding, which is quite different than a Chapter 11 or a Chapter 7 proceeding. So Congress, again going back to the idea that Congress gives powers to federal courts that are limited in character. In Chapter 15, which is based upon comedy principles to assist the Bermuda Supreme Court, Congress specifically said that unlike a Chapter 7 or a Chapter 11 case, that the debtor does not have the right to pursue avoidance claims provided under the code. So if we were in a Chapter 11 case, and I were representing a committee of unsecured creditors, for instance, the debtor has to proceed and pursue the avoidance claims against people who've received transfers. That is not the case here. Indeed, Congress said that the debtor does not have that right under the code. So I saw a tension between the relief that at least you initially saw in your complaint and the district court's description of it, which supported the district court's conclusion, and then the way you sort of characterized it in your appeal. So I want to be clear as to what it is you're seeking. In the complaint, it seemed as though . . . it was described as avoiding the transactions, but it seemed as though it was asking for the money to go directly from the third-party defendants to your client, whereas the district court's rationale for why this had relating to jurisdiction was that because you're trying to avoid those transactions, the money would flow back into PBLA, into the trust. Can you tell me which of those visions you now endorse? Sure. So this case arises in a complicated reinsurance scheme. There was an arbitration that resulted in the conclusion by the panel that PBLA, as the reinsurer, had failed to adhere to the reinsurance agreement and have assets of a certain quality and type that was held by the trustee to provide collateral to pay the reinsurance claims. So that's the first instance. The panel said that the relief that our client was entitled to was to have $524 million placed in a segregated bank account because PBLA had not properly put assets of a quality that it should have in the trust. Oh, I see. So the money from the arbitration is supposed to go into a segregated account that will fulfill the obligations that PBLA agreed to in the reinsurance agreement in the first place. And is that where the money that you're seeking would go? Correct. So what we're going to do with that money- These are contractual remedies the arbitrators were enforcing- That's correct, Your Honor. As a result of the nature of the trust and the trustee's fiduciary responsibility under the reinsurance agreement. That's correct. So the panel found that PBLA had violated the requirements of the quality and type of the investment. So not only were they- Because they're characterized as fraudulent conveyances, and I was thinking in that context. But really, this is a- It's really an enforcement action on the award. Not exactly, but I understand the metaphor that's being used. The circumstances here are that the panel entered that award. It was then confirmed by Judge Lyman and appealed to this court. And so now that award and thereby the judgment is final and non-appealable. So therefore, we are in the position of being a creditor of PBLA with a typical kind of state court-type fraudulent conveyance claim. So for instance, if you're a bank and somebody sells their boat for $100, that person who sold the boat for $100 isn't trying to avoid that transaction. Yeah, but years ago, a representative bank used to chase folks who had done those kinds of things. Right. That's where we are here. So can I ask then, why- And I understand you're the main creditor here. But there are other creditors. Why isn't the relief that you're describing an end run around the other creditors? If everybody's going to get $0.50 on the dollar, but the money from these defendants, from these fraudulent conveyances, goes straight into the trust that's your client's interest, rather than into the bankrupt estate where everybody's going to get their- So- Yeah. Remember, again, it's a Chapter 15 case. And we're dealing- It's the odd circumstance that the debtor can't pursue the fraudulent conveyance that the debtor themselves did convey. Just so, Your Honor. So it doesn't become part of the bankruptcy estate. Correct. Although what it effectively does is reduce your claims against the bankruptcy estate. And thereby make more assets available to other creditors to the extent they show up in Bermuda. Now, let me say one thing about the Bermuda proceedings. We have been deemed to be a priority creditor under the law of Bermuda because this is an insurance transaction. That means that we have a claim that is superior in priority over all other creditors except other insurance creditors. None of whom have shown up. So the reality of the situation is that any of the money that PBLA gets or that we get in the fraudulent conveyance claim is going to go to us up until such time as we are satisfied. And my client would be delighted to be satisfied, but I'm sorry to say it's unlikely to find itself so delighted. So there are no other creditors who are filed under the Bermuda bankruptcy. You're the top priority creditor, and so you've got your 532 million already. Judgment collecting on it is another matter. And then anything that's left after that, nobody's shown up for yet to try and claim it. So we are effectively in the position of a senior secured lender in a Chapter 11 case that has a claim that's so big that it swamps the case and that realistically general unsecured creditors are likely to take nothing. That is the case here. I would be delighted if I'm wrong. But as of right now in the Bermuda Supreme Court, no other priority creditors have shown up. And there is an order from the Supreme Court saying that my client's claim is a priority claim. So we're not trying to do an end run around other creditors. We're just simply trying to get what we're entitled to under the arbitral award and the judgment. Now, Judge Torres used an example in her opinion that comes from one of the colorfully named special purpose vehicles in the Lindbergh Enterprise here, the Flowery Branch Company. So what happened there as an example is that $10 million came out of the trust at PBLA's direction and then went to this exotically named company, Flowery Branch, which then took the money and distributed it around the other Lindbergh Enterprise to other companies that we're going to have to try to chase down ultimately to get the money back. The reason that that's important here is it shows if we get that money, that $10 million back, it's going to inure to the benefit of our client's rights under the reinsurance agreement to be collateralized in the payments. That's all we're looking for. We're not trying to do a double recovery. We're not trying to do an end run around other creditors. We're simply trying to find a way to get the cash that the panel said we needed to be able to pay the claims. So the one other question I had about your answer makes sense to me except it inspires this question, which is that it revolved around the agreement as to the proceeds as a result of the arbitration. One of the counterarguments I understand is no, at the time of filing rule, you need to describe why your recovery impacts the bankruptcy estate from the time you filed. And there's sort of this generic, well, I mean, as a matter of common sense, it makes sense. You're the main creditor, and if it reduces your injury, it affects the estate. But it does seem like that is a setoff of sorts, and I'm trying to understand why that's not. So I think the confusion that crept into the case about the time of filing rule and the setoff, et cetera, is a result of something that we did that we hoped would clarify things that I'm sorry to say confused them. We entered into a settlement agreement with the JPL so that there was absolute clarity that we were not trying to do a double recovery so that any of the monies that we got from these fraudulent conveyance claims would, as they would otherwise have done in any case, reduce our judgment against PBLA dollar for dollar. I'm sorry to say what happened as a consequence of that is that people thought we were trying to create subject matter jurisdiction by contract. That is not the case. That's not what we were trying to do. If that contract didn't exist, the exact result would obtain nonetheless. We cannot recover $1 twice, and we're not trying to do so. But the principle that you can't recover $1 twice arises from a notion of setoff, right? You have a claim against the bankrupt estate. It's for X dollars. How do we get to the notion as on the ground matter? What's the mechanism for saying no? It's actually X minus prior recovery. There are no this setoff concept simply is inapplicable here. There are no claims against my client by anyone. It's not really set off. It's just satisfaction. Correct. And with that, if there are no other questions, thank you very much. Thank you, Counsel. We'll hear about them. Thank you, Your Honors. I want to go back to the jurisdiction question. The MTB case was exactly an appeal from a non-appealable, non-final order. It was the denial of a remand motion. But this court said it was an obligation to take up that issue and, in fact, found no jurisdiction and directed the district court to remand. Your Honor, you're exactly right on the setoff notion. Because there's a third party, it is a triangular type thing, and so the notion of it is it is a setoff of these three different entities that are involved in the transactions. And why is it? So I think what I understood is no setoff is a term of art that means I've got a judgment against you, you've got a judgment against me rather than each of us paying the full amount and we do the math. Right. Right. And I think what I hear is no, this is just the bankrupt estate getting a credit against the claims for me for every dollar that I recover from a third party for essentially the same claim. Well, and the interesting thing about this case is they're suing to collect on loans. And we have to focus on what they pled, what is the relief they sought in their First Amendment complaint. And the only thing they asked for in the First Amendment complaint is money in their pocket. Monetary damages for them. They didn't ask for money to be put back into the trust. So because they're, and the JPLs are out there suing on these notes. It's not like there's no way that this money can be collected from somebody. So tell me about that. I thought I understood that they can't. No, no, no. They can go to state court. And are they doing that? And they're out there doing that. So are your clients facing double exposure? Yes, Your Honor. So why wouldn't it be in your client's interest to get pulled into the bankruptcy court as it related to, so that there's sort of everything's under one umbrella? It's never in anybody's interest to be in a court that lacks subject matter jurisdiction. It just isn't. Now, there are individual defenses that go to individual loans, and those are being litigated in different places. And to the extent the JPLs, joint provisional liquidators, collect on those loans, it will have an effect here. That's why it's important that this court not exercise jurisdiction over a case that it doesn't have jurisdiction over, or the bankruptcy court. And it's the zero-sum game because they're trying to collect on loans, and every dollar that they collect, if they do, reduces the assets of the estate. Which in turn affects what's available to the creditors, right? I mean, isn't that sort of definitionally- No, no, it's a zero-sum game. So whatever- Do you disagree with your opponent's characterization that in Chapter 15, the debtor can't pursue fraudulent conveyance claims? Not federally. The federal fraudulent transfer statute doesn't apply in Chapter 15. So why isn't this then avoid the problem that you have? They pursue the claim. They recover on it dollar for dollar. It reduces their claim against the trust since they're recovering monies that the trust- Trust monies that have been fraudulently conveyed to others. Because that provides no net benefit to the bankruptcy estate. It's a zero-sum game. Do you agree they're the highest priority creditor? I'm not familiar with the Bermuda order, Your Honor. You're not familiar with it? No, I'm not familiar with it. Okay. But the point is, any dollar that they collect, there are other creditors out there. I would suggest you should be aware of bankruptcy law if you're telling me that it's going to affect the bankruptcy estate. I'm very familiar with Chapter 15. I'm very familiar with the federal, and that's what we're dealing with. But the point is, there are other creditors out there. And so any recovery money in their pocket will, at the same time, reduce by an equal amount the assets that are available to the other creditors. So there's no net benefit to other creditors from what they're trying to do in this case. No, but there's a benefit to this creditor. I mean, this is a creditor of the estate. Right. So why would we write them out of the equation in trying to figure out whether there's a conceivable effect on the assets available for creditors if they're one of them? Because the standard under 1334B is a net benefit to the estate, not to this creditor. I mean, if we were to accept that argument, then there would be no limit to 1334B related to jurisdiction. Non-party, we have a non-party creditor suing non-parties. And to accept that proposition is all those cases would be brought here. But the standard under 1334B is there has to be a benefit to the estate, not to the creditor bringing the claim. And so that's it. Any further questions? We'll take the case under advisement. Thank you.